**Opinion issued July 14, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-24-00716-CR**

———————————

**BRANDON JAMAL GREGORY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1705564**

**MEMORANDUM OPINION**

A jury found appellant, Brandon Jamal Gregory, guilty of the felony offense of murder[1] and assessed his punishment at confinement for thirty-five years. In two issues, appellant contends that the trial court erred in overruling his objection

---

[1] *See* TEX. PENAL CODE ANN. § 19.02.

to certain testimony during the punishment phase of trial and his trial counsel provided him with ineffective assistance during the punishment phase of trial.

We affirm.

## Background

During the punishment phase of trial, Nicole Donaldson, appellant's mother, testified that appellant was twenty-seven years old and did not graduate from high school. When appellant was a teenager, he would "break[] curfew, not com[e] home . . . when he[] [was] supposed to, [and] stay[] over at friends' houses[] [without] letting his family know." Appellant was diagnosed with attention-deficit/hyperactivity disorder when he was fourteen years old, but he stopped taking his medication during his freshman year of high school.

Appellant moved out of Donaldson's home at eighteen years old and stayed with his friends or his uncle. At some point, appellant entered into a relationship with a woman who had a "[v]iolent nature." He lived with her for about a year before he moved out due to their "toxic relationship." Eventually, he and the woman reconciled, and they were in an "off and on" relationship for about three years.

Donaldson further testified that she wanted to "show the human side" of appellant. She stated that he was very smart and helped her set up and run her

2

e-commerce business. He would bring her breakfast on Sundays and flowers on Mother's Day.

When appellant was released on bond while the case was pending, he was subject to a curfew and was required to wear an ankle monitor. He did not go back to jail for violating any conditions of his bond. While released on bond, appellant worked for Donaldson's business, and they spent a lot of time together. According to Donaldson, after appellant's arrest, he made a positive change. Appellant had "committed himself to Islam," and "any time that [they] were out, even . . . during court, he set aside to say his prayers." Appellant's beliefs had "given him peace throughout this process," and he had exhibited a "calmness" and an "ability to be open to instruction and humbleness."

Donaldson also explained that appellant had stayed away from narcotics and criminal behavior while the case was pending because "being in the home," "having to have constant monitoring," and "being limited on where [he] c[ould] go and when [he] c[ould] go," "forced [appellant] to look internally and make some personal changes." Appellant's family had become closer, and appellant had seen "the importance of family, the importance of a support system that supports sober living, and really g[ot] to see what life is like, and how good life c[ould] be." According to Donaldson, she had noticed a change in appellant's ability to have empathy for others because he was sober.

Donaldson requested that the jury assess appellant's punishment at "the lesser end" because appellant was "deserving of having the ability to have life in the free world." Donaldson stated:

> I think that his ability to change, his ability to be of acceptance of whatever comes his way, I think his ability to adjust, but more than anything else, I really do believe that [appellant] deserves not to be judged by his past but by his self as right now.

According to Donaldson, appellant "did have moments of being questionable, but he [was] not [the] person that [she] believe[d] [had been] painted by the [State]." Appellant had a loving family, a strong support system, and had "demonstrated the ability to compose himself." Appellant had "evolved as a young man" and was not a threat to the community. Appellant could live with Donaldson upon his release.

On cross-examination, Donaldson acknowledged that in December 2011, law enforcement officers came to her home related to an argument between appellant and his siblings. Donaldson told officers that appellant had fled her home after the argument. According to Donaldson, that was not the first time that appellant had fled her home, as a child, and in the past, she had called law enforcement multiple times to help her find appellant. In April 2014, Donaldson called law enforcement officers to report a verbal altercation between herself and appellant.

Also, during cross-examination, the following exchange occurred:

4

| | |
|---|---|
| [The State]: | Ms. Donaldson, I was going to ask you a few questions about Islam. Okay? Isn't it true that retribution is not -- the recompense for those who wage violent transgressions against God and his messengers and who go forth spreading corruption in the earth is that they should be killed or crucified or that their hands and their feet should be cut off alternate sides, that they should be sent into exile, from the Quran 5:33? |
| [Defense counsel]: | Objection, calls for speculation by this witness. |
| The Court: | Sustained. |

. . . .

| | |
|---|---|
| [Defense counsel]: | Judge, ask the jury to be instructed to disregard that. |

. . . .

| | |
|---|---|
| [The State]: | We're asking if this witness knows. |
| The Court: | All right. I'll allow it. |
| [The State]: | Do you know if that's what the Quran says? |
| [Donaldson]: | No, I'm a Christian. |
| [The State]: | And so you're saying you're a Christian. So Ms. Donaldson, you're familiar with the concept eye for an eye, right? |
| [Donaldson]: | I am, and I'm also familiar with mercy and grace. |
| [The State]: | And you understand that the Quran also believes eye for an eye, tooth for a tooth? |

5

| [Donaldson]: | Sir, I don't follow the Quran. I made that clear in the beginning. |
|---|---|
| . . . . | |
| [The State]: | And Ms. Donaldson, in addition to mercy, you understand that the Christian faith does believe in punishment and retribution, correct? |
| [Donaldson]: | I do. |

## Admission of Testimony

In his first issue, appellant argues that the trial court erred in allowing the State to question Donaldson about the Quran during the punishment phase of trial because "the question . . . improperly asked . . . Donaldson, who had no knowledge of Islamic beliefs, to speculate about religious scripture."

A trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court's decision to admit evidence will be upheld if it is "within the zone of reasonable disagreement." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).

During its cross-examination of Donaldson, the State asked her:

6

Isn't it true that retribution is not -- the recompense for those who wage violent transgressions against God and his messengers and who go forth spreading corruption in the earth is that they should be killed or crucified or that their hands and their feet should be cut off alternate sides, that they should be sent into exile, from the Quran 5:33?

Before Donaldson answered, appellant objected to the State's question because it "call[ed] for speculation."[2]  In response, the State told the trial court that it was asking Donaldson "if [she] kn[ew]" what the Quran said.  After the trial court overruled appellant's objection, the State rephrased its question to ask: "Do you know if that's what the Quran says?"  And Donaldson responded: "No, I'm a Christian."

Texas Rule of Evidence 602 states that a witness who is not giving expert testimony may not testify to a matter unless she has personal knowledge of the matter.  TEX. R. EVID. 602; *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App.

---

[2] To the extent that appellant, in his briefing, complains about any other questions related to "religious scripture" which the State asked Donaldson during its cross-examination, appellant has not preserved his complaints for appellate review because he did not object to the State's other questions.  *See* TEX. R. APP. P. 33.1(a); *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007).  Additionally, we note that the only objection appellant made to the State's question quoted above was that it "call[ed] for speculation."  To the extent that appellant, in his briefing, attempts to assert other reasons why the State's question was improper, i.e., because it constituted a leading question, was prejudicial, and violated appellant's constitutional rights, those objections were not made in the trial court and have not been preserved for appellate review.  *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) (defendant fails to preserve error when contention urged on appeal does not match specific complaint made in trial court); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (objection stating one legal basis may not be used to support different legal theory on appeal).

2002). A speculation objection is directed to a witness's lack of personal knowledge based on rule 602. *Wade v. State*, No. 05-23-01244-CR, 2026 WL 978583, at *6 (Tex. App.—Dallas Apr. 10, 2026, no pet.) (mem. op., not designated for publication). The State's question to Donaldson asked whether she knew a particular verse from the Quran. Donaldson said that she did not. The State's question sought to determine whether Donaldson had personal knowledge about the Quran. *See Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997) (proponent of lay-opinion testimony must establish that witness has personal knowledge). We hold that the trial court did not err in allowing the State to question Donaldson to establish whether she had personal knowledge of the Quran.

We overrule appellant's first issue.

## Ineffective Assistance of Counsel

In his second issue, appellant argues that his trial counsel provided him with ineffective assistance during the punishment phase of trial because counsel did not object to the "State's continued cross-examination of [Donaldson] about scripture" and did not "object to the State's closing argument suggesting that [appellant] be sentenced according to the laws of his faith."

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001);

8

*see also* TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05; *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986) (test for ineffective assistance of counsel same under both federal and state constitutions). To prove a claim of ineffective assistance of counsel, a defendant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A defendant has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A defendant's "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). To rebut that

presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (internal quotations omitted).

First, appellant argues that his trial counsel's performance was deficient because counsel only objected to the State's first question to Donaldson on cross-examination about the Quran and did not continue objecting to the State's remaining questions about "scripture" and Donaldson's "own faith."[3] (Emphasis omitted.)

Allegations of ineffectiveness must be firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999) (appellate court should be "highly deferential to trial counsel and avoid the deleterious effects of hindsight"). In most cases, a direct appeal is an inadequate vehicle for raising an ineffective-assistance-of-counsel complaint because the record is undeveloped, and a silent record cannot adequately reflect the motives behind trial counsel's actions. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) ("[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective."). A silent record that provides no explanation for

---

[3] The portion of the State's cross-examination of Donaldson that appellant appears to complain his counsel should have objected to is quoted in the background section of this opinion.

trial counsel's conduct, like the one here, will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Here, trial counsel was not given an opportunity to explain his actions,[4] and we cannot conclude that the "challenged conduct was so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 593 (internal quotations omitted). There may have been strategic reasons for appellant's counsel not objecting to the complained-of portions of the State's cross-examination of Donaldson, and we may not speculate on counsel's motive in the face of a silent record. *See Navarro v. State*, 623 S.W.3d 97, 112 (Tex. App.— Austin 2021, pet. ref'd) ("Ultimately, we do not know why trial counsel did not object to the questioning or testimony with which appellant now takes issue."); *Bell v. State*, Nos. 04-09-00417-CR to 04-09-00419-CR, 2010 WL 4340655, at *3 (Tex. App.—San Antonio Nov. 3, 2010, pet. ref'd) (mem. op., not designated for

---

[4] Although appellant filed a motion for new trial, he did not argue in his motion that his trial counsel provided him with ineffective assistance of counsel because counsel failed to object to the State's remaining questions on cross-examination of Donaldson about "scripture" and Donaldson's "own faith." (Emphasis omitted.) As such, trial counsel was not given an opportunity to explain his conduct. *See Hall v. State*, No. 02-09-00213-CR, 2010 WL 4570035, at *3 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (noting where defendant filed motion for new trial, but did not raise ineffective-assistance-of-counsel complaint in motion, "any trial strategy that [defendant's] attorneys may have had for their challenged actions [was] not contained in the record").

11

publication) ("[T]he failure to object to [even] inadmissible evidence, alone, does not necessarily constitute ineffective assistance."); *see also Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ("The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel."). We conclude that appellant has not met his burden of establishing that his counsel's performance, in not objecting to the complained-of portion of the State's cross-examination, fell below an objective standard of reasonableness.

Appellant next argues that his trial counsel's performance was deficient because counsel did not object to the State's closing argument "suggest[ing] that [a]ppellant should be judged according to his religious beliefs."

We presume that appellant complains about his counsel's failure to object the portion of the State's closing argument, which he referenced in the background section of his brief, wherein the State remarked: "He said he's gotten closer in Islam because he's asking for that forgiveness later. In Islam, it says an eye for an eye, a life for a life, and he knows that."

Again, trial counsel has not been given an opportunity to respond to appellant's claim that he was ineffective for not objecting to the complained-of

portion of the State's closing argument.[5]  And we cannot conclude that trial counsel's conduct was "so outrageous that no competent attorney would have engaged in it."  *See Menefield*, 363 S.W.3d at 593 (internal quotations omitted); *see, e.g.*, *Sandoval v. State*, 665 S.W.3d 496, 545 (Tex. Crim. App. 2022) (where trial counsel did not object to State's closing argument that referenced "eye for an eye," but record was silent as counsel's reasoning, holding failure to object did not constitute deficient performance (internal quotations omitted)).  For instance, counsel may have chosen strategically not to object so as not to direct the jury's attention to the State's closing argument.  *See Richards v. State*, 912 S.W.2d 374, 381 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (determining counsel's failure to object to State's improper comments may have been reasonable trial strategy); *see also Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005) (when reviewing court "can conceive potential reasonable trial strategies" for counsel's conduct, it "cannot conclude that counsel has performed deficiently").  We conclude that appellant has not met his burden of establishing that his counsel's performance, in not objecting to the complained-of portion of the State's closing argument, fell below an objective standard of reasonableness.

---

[5]  Appellant did not argue in his motion for new trial that his trial counsel provided him with ineffective assistance of counsel because counsel failed to object to the complained-of portion of the State's closing argument.  As such counsel did not have an opportunity to explain his conduct.  *See id.*

13

Accordingly, we hold that appellant failed to establish that his trial counsel's performance was deficient, and thus, cannot show on this record that his counsel provided him with ineffective assistance.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Kristin Guiney
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).